**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Barbara Riddle,** | ) | **Civil Action No.:_____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**COMPLAINT**

1.     This is an action brought by Plaintiff, Barbara Riddle, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, (hereinafter "FCRA").

2.     The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.     The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.     Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

2

## JURISDICTION AND VENUE

8.      This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §§1331.

9.      Venue is proper in the Florence Division because the Plaintiff resides in Darlington County and the Defendant transacted business in this division.

## PARTIES

10.     Plaintiff, Barbara Riddle, is a resident and citizen of the State of South Carolina, Darlington County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11.     Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12.     Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13.     Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14.     Defendant's acts and omissions alleged herein are in violation of the Fair Credit

Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

15.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Trans Union credit file, and failed to reinvestigate Plaintiff's disputes.  Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

16.     In April, 2024, Plaintiff became the victim of identity theft when an unknown third party opened an American Express credit card account in her name without her knowledge or permission.

17.     On or about May 2, 2024, Plaintiff received a credit card in the mail from American Express.  Plaintiff immediately contacted American Express and informed them she did not open the credit card account.  Thereafter, Plaintiff mailed the original credit card back to American Express.

18.     On March 14, 2025, Plaintiff filed a police report with the Darlington County Sheriff's Office regarding the theft of her identity.  Plaintiff specifically identified the American Express credit card account as having been fraudulently opened in her name.

19.     In April 2025, Plaintiff contacted Defendant and placed a credit freeze on her

Equifax credit file.  At that time, Plaintiff also requested a copy of her credit report be sent to her.

20.    On or about April 29, 2025, Defendant sent Plaintiff a letter confirming that the credit freeze had been placed on Plaintiff's Equifax credit report.

21.    On or about June 9, 2025, Plaintiff, with the help of her daughter, went online to www.annualcreditreport.com and obtained a copy of her Equifax credit report. Upon review of her Equifax credit report, Plaintiff discovered that American Express was reporting the fraudulent credit card account, American Express Account No. *6083, (hereinafter the "Account"), as a derogatory account, belonging to her.  Specifically, the Account was reporting as opened on April 2, 2024, with a balance due of $10,556, and closed on November 21, 2024.

22.    On or about June 20, 2025, Plaintiff sent a dispute letter to Defendant (**"First Dispute"**).  Plaintiff informed Defendant that she was the victim of identity theft in April of 2024 when an American Express credit card was opened in her name without her knowledge of permission.  Plaintiff informed Defendant that as soon as she learned of the fraud, she contacted Defendant and requested a fraud alert be added to her credit file and requested a copy of her credit report from Defendant.  Plaintiff disputed the Account as a fraudulent account opened in her name without her knowledge or permission.  Plaintiff also disputed the reporting of hard inquiry by Capital One Bank USA NA on April 2, 2024, as she had not applied for credit with Capital One Bank.

23.    Defendant received Plaintiff's June 20, 2025, dispute on July 1, 2025.

24.    On or about July 1, 2025, Defendant sent Plaintiff a letter stating it had received

5

Plaintiff's request for fraud alert, but they would need additional information to verify Plaintiff's identity and address. Defendant requested Plaintiff send them a letter including her full name, any former names, current and former addresses, and date of birth. Defendant also requested Plaintiff send copies of documents verifying her identity and address.

25.    On or about July 3, 2025, Defendant sent Plaintiff a second letter stating it had received her request to add a one-year fraud alert. Defendant again informed Plaintiff that she was required to provide her full name, former names, current and former addresses, and date of birth, along with copies of documents verifying her identity and address, before Defendant would add the requested fraud alert to her credit report.

26.    On or about July 3, 2025, Defendant also sent Plaintiff a letter stating it had received her recent dispute regarding the Account, but their records indicated a dispute was currently in process. Accordingly, Defendant considered Plaintiff's dispute "frivolous" and refused to investigate.

27.    On or about August 13, 2025, Plaintiff sent a second dispute letter to Defendant **("Second Dispute")**. In this letter, Plaintiff specifically disputed the Account as fraudulent. Plaintiff also disputed the hard inquiry by Capital One Bank USA NA on April 2, 2024, as she did not apply for credit with Capital One, nor did she authorize Capital One to view her credit report. With her letter, Plaintiff provided Defendant a copy of her Social Security card and driver's license.

28.    On or about September 6, 2025, Defendant sent Plaintiff its Investigation Results, wherein Defendant stated the disputed Account and the disputed hard inquiry by Capital

One Bank USA NA on April 2, 2024, were not currently reporting on Plaintiff's Equifax credit file. However, Defendant did not provide Plaintiff a copy of her credit report so she had no way of verifying that the disputed fraudulent items were actually removed from her credit report.

29.     On or about October 29, 2025, Plaintiff sent a third dispute letter to Defendant ("**Third Dispute**"). In her letter, Plaintiff again disputed the Account as fraudulently opened in her name without her knowledge or permission. Plaintiff also disputed the hard inquiry by Capital One Bank USA on April 4, 2024, as fraudulent as she did not apply for credit with nor authorize Capital One Bank USA to view her credit report. With her dispute letter, Plaintiff provided Defendant another copy of her driver's license and social security card. Plaintiff also enclosed a copy of the police report she filed regarding the Account. Finally, Plaintiff provided Defendant her full social security number, date of birth, and address.

30.     Defendant received Plaintiff's Third Dispute on October 31, 2025.

31.     Defendant never responded to Plaintiff's Third Dispute.

32.     Defendant never reinvestigated Plaintiff's Third Dispute.

33.     To date, Defendant continues to report inaccurate, misleading, and fraudulent information on Plaintiff's Equifax credit file.

34.     While Defendant was reporting the fraudulent Account and fraudulent Inquiry as belonging to Plaintiff on Plaintiff's credit file, Plaintiff's Equifax credit report was viewed by various third parties.

35.     Defendant failed to make a reasonable investigation into Plaintiff's disputes.

36.    For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information.  The CRA must make some independent investigation of its own.  "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

37.    If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

38.    Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

**COUNT ONE**
(Fair Credit Reporting Act)

39.    The Plaintiff adopts the averments and allegations of paragraphs 16 through 38

8

hereinbefore as if fully set forth herein.

40.     Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

41.     Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

42.     Due to Defendant's failure to comply with the requirements of the FCRA, the Plaintiff is entitled to statutory damages.

43.     As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered damage to her credit and credit reputation, and lost credit opportunities.  Additionally, Plaintiff suffered anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to correct her credit reports, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

44.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

45.     In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

46.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## COUNT TWO
(Fair Credit Reporting Act)

47. The Plaintiff adopts the averments and allegations of paragraphs 16 through 46 hereinbefore as if fully set forth herein.

48. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

49. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

50. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

51. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered damage to her credit and credit reputation, and lost credit opportunities. Additionally, Plaintiff suffered anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, time spent trying to correct her credit reports, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

52. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

53. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

54. Further, Defendant's acts and omissions were willful and demonstrate a reckless

disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

55.    Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    For this trial to be heard by a jury; and

E.    For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

11

**<u>DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:</u>**

Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
100 Coastal Drive, Suite 210
Charleston, South Carolina 29492